935 F.2d 240
 INDUSTRIAL INDEMNITY INSURANCE COMPANY, a foreign insurance
corporation, Plaintiff-Counterdefendant,
v.
CROWN AUTO DEALERSHIPS, INC., a Florida corporation, Stone
Buice, Inc., a Florida corporation,
Defendants-Counterplaintiffs.
SOUTHEASTERN FIDELITY INSURANCE CORPORATION, Plaintiff-Appellee,
v.
DIMMITT CHEVROLET, INC., Larry Dimmitt Cadillac, Inc.,
Defendants-Appellants.
FEDERATED MUTUAL INSURANCE COMPANY, Plaintiff-Counterdefendant,
v.
LEE RAGATZ VOLKSWAGEN, INC., Defendant-Counterplaintiff.
FEDERATED MUTUAL INSURANCE COMPANY, Plaintiff,
v.
KENYON DODGE, INC., Defendant.
 No. 90-3359.
 United States Court of Appeals, Eleventh Circuit.
 July 10, 1991.
 
 William F. McGowan, Jr., Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., Joseph W. Dorn, Kilpatrick & Cody, Thomas K. Bick, Washington, D.C., for defendants-appellants.
 Robert E. Austin, Jr., Austin, Lawrence & Landis, Leesburg, Fla., Hal K. Litchford, Orlando, Fla., for plaintiff-appellee.
 Jeff G. Peters, Asst. Atty. Gen., Tallahassee, Fla., amicus curiae State of Fla.
 Thomas W. Brunner, Wiley, Rein & Fielding, Washington, D.C., amicus curiae Insurance Environmental Litigation Ass'n.
 Appeal from the United States District Court for the Middle District of Florida.
 Before ANDERSON and DUBINA, Circuit Judges, and GIBSON*, Senior Circuit Judge.
 ANDERSON, Circuit Judge:
 
 
 1
 This case involves an important issue of Florida law that has not been addressed by the Supreme Court of Florida--i.e., whether the liability insurance policy at issue provides coverage for claims against the insured by environmental authorities arising out of hazardous waste contamination. Because similar insurance contracts have received varied interpretations in other jurisdictions throughout the country, we believe that the issue is one appropriate for resolution by Florida's highest court. We therefore certify the question to the Supreme Court of Florida.
 
 
 2
 CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA PURSUANT TO ARTICLE 5, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION.
 
 
 3
 TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:
 
 
 4
 I. Statement of the Facts and Procedural History
 
 
 5
 The following facts, taken from the district court's opinion, Industrial Indem. Ins. Co. v. Crown Auto Dealerships, 731 F.Supp. 1517, 1518-19 (M.D.Fla.1990), are undisputed. Appellants Dimmitt Chevrolet, Inc. and Larry Dimmitt Cadillac, Inc. ("Dimmitt") operated two automobile dealerships. From 1974 through 1979, Dimmitt sold the used crankcase oil generated by its business to Peak Oil Company ("Peak"). From 1954 to 1979, Peak recycled the oil at its plant in Hillsborough County, Florida for sale as used oil.
 
 
 6
 In 1983, the Environmental Protection Agency ("EPA") determined that Peak's oil operations had resulted in extensive soil and groundwater pollution at and around the plant site. Much of this pollution resulted from Peak's placement of waste oil sludge in unlined storage ponds. Chemicals from the sludge then leached into the soil and groundwater. Some of the pollution also derived from oil spills and leaks at the site, including a 1978 incident in which a dike collapsed and allowed oily wastewater to be released from a holding pond,[1] and the occasional runoff of contaminated rainwater.
 
 
 7
 In July 1987, the EPA notified appellants that a release of hazardous substances had occurred at the Peak site and that appellants were potentially responsible parties ("PRP") for the costs of investigating and cleaning up the pollution. This liability is imposed, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. Sec. 9607 et seq., on anyone who generates, transports, or disposes of hazardous substances. In February 1989, Dimmitt and other PRPs entered into two administrative orders with EPA. Without conceding liability, appellants agreed to undertake remedial measures at the Peak site.
 
 
 8
 Appellee Southeastern Fidelity Insurance Corporation ("Southeastern") provided comprehensive general liability ("CGL") insurance coverage to Dimmitt from 1972 through 1980.[2] The policy covered Dimmitt
 
 
 9
 for all sums which the INSURED shall become legally obligated to pay as DAMAGES because of A. BODILY INJURY or B. PROPERTY DAMAGE to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the INSURED seeking DAMAGES on account of such BODILY INJURY or PROPERTY DAMAGE, even if any of the allegations of the suit are groundless....
 
 
 10
 An "occurrence" is defined by the policy as
 
 
 11
 an accident including continuous or repeated exposure to conditions, which result in BODILY INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED....
 
 However, the policy excluded coverage for
 
 12
 BODILY INJURY or PROPERTY DAMAGE arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids, or gases, waste materials ... into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental....
 
 
 13
 In October 1988, Southeastern filed a declaratory judgment action against Dimmitt, seeking a declaration by the district court that Southeastern owed no duty to defend or indemnify Dimmitt under the CGL policy. Dimmitt filed a counterclaim seeking a contrary declaration. Both parties subsequently filed motions for summary judgment. The district court granted summary judgment in favor of Southeastern, reasoning that the pollution exclusion was not ambiguous and that the word "sudden" should be given a temporal meaning. Industrial Indem. Ins. Co. v. Crown Auto Dealerships, 731 F.Supp. 1517 (M.D.Fla.1990). Accordingly, the district court ruled that the pollution at the Peak site occurred over a period of years and therefore could not be considered "sudden." The district court subsequently denied without opinion Dimmitt's motion to alter or amend the judgment.II. Reasons for Certification
 
 
 14
 This case involves the proper interpretation under Florida law of the pollution exclusion clause contained in the CGL policy issued and drafted by Southeastern. Dimmitt argues that the pollution exclusion clause is ambiguous and should be construed in favor of coverage under established principles of policy construction in Florida. There is ample authority in other jurisdictions on both sides of the issue. See Claussen v. Aetna Cas. & Sur. Co., 865 F.2d 1217, 1219 (11th Cir.1989) (citing authorities and certifying similar question to the Supreme Court of Georgia). Therefore, we believe the issue to be appropriate for resolution by the highest court of Florida.
 
 
 15
 III. Question to be Certified to the Florida Supreme Court
 
 
 16
 The following question is certified to the Florida Supreme Court:
 
 
 17
 WHETHER, AS A MATTER OF LAW, THE POLLUTION EXCLUSION CLAUSE CONTAINED IN THE COMPREHENSIVE GENERAL LIABILITY INSURANCE POLICY PRECLUDES COVERAGE TO ITS INSURED FOR LIABILITY FOR THE ENVIRONMENTAL CONTAMINATION THAT OCCURRED IN THIS CASE.
 
 
 18
 We do not intend the particular phrasing of this question to limit the Supreme Court of Florida in its consideration of the problems posed by the entire case. In order to assist consideration of the case, the entire record,[3] along with the briefs of the parties, shall be transmitted to the Supreme Court of Florida.
 
 
 
 *
 Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 Although the 1978 dike collapse was not included in the district court's statement of facts, it was presented to the district court in the Affidavit of David A. Morris, R2-35 Exhibit D, at 5
 
 
 [2]
 As the district court noted, there is a dispute regarding the exact period of coverage. See Crown Auto, 731 F.Supp. at 1519 n. 2. This dispute, however, is not relevant to the instant certified question because there is no dispute that Southeastern provided insurance coverage during some of the period giving rise to Dimmitt's potential liability. Of course, the precise period of insurance coverage would become relevant if Southeastern is ultimately found to be liable
 
 
 [3]
 We conclude that the record properly includes the extrinsic evidence submitted by Dimmitt regarding the drafting history of the pollution exclusion clause and the intent of the insurance companies. Appellee argues that such extrinsic evidence is not properly a part of the record on appeal because much of it was proffered with the post-trial motion to alter or amend and was thus untimely. Under the circumstances of this case, it was appropriate for Dimmitt to proffer the evidence in connection with the motion to alter or amend. The district court ruled that the evidence was discoverable in a February 8, 1990 order. R4-83. The parties' pretrial stipulation contemplated that the issue of admissibility of the evidence would be decided at a motion in limine. R4-94-25, at p 12(4). However, the district court granted summary judgment prior to the date set for trial. Dimmitt reasonably planned to argue for admissibility of the evidence at a motion in limine, rather than in a supplemental brief in connection with the pending summary judgment motions, because the district court's February 8, 1990 order denied motions by certain other auto dealerships to file supplemental briefs in support of their cross-motions for summary judgment. R1-83-4. Furthermore, Southeastern had an opportunity to respond to the extrinsic evidence, and in fact did respond, in their Memorandum in Opposition to Defendant's Motion to Alter or Amend Judgment. R4-104. Finally, at least some of the evidence was discussed in opinions cited by the district court in its order granting summary judgment. See, e.g., Claussen v. Aetna Cas. & Sur. Co., 259 Ga. 333, 380 S.E.2d 686 (1989)