AMERICAN POLICYHOLDERS
INSURANCE COMPANY,
Plaintiff, Appellant,

v.

NYACOL PRODUCTS, INC., et
al., Defendants, Appellees.

No. 92–1949.

United States Court of Appeals,
First Circuit.

Heard Dec. 9, 1992.

Decided Feb. 24, 1993.

Order Denying Rehearing April 28, 1993.

Jennifer S.D. Roberts, with whom Rackemann, Sawyer & Brewster, P.C. Boston, MA, was on brief, for plaintiff, appellant.

Catherine M. Flanagan, Atty., Dept. of Justice, Environment & Natural Resources Div., with whom Vicki A. O'Meara, Acting Asst. Atty. Gen., and David C. Shilton, Atty., Environment & Natural Resources Div., Washington, DC, were on brief, for Julie Belaga, Regional Adm'r, U.S. E.P.A., defendants, appellees.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.

SELYA, Circuit Judge.

This appeal, which arises out of an insurance company's efforts to secure a binding declaration of its rights and responsibilities under an insurance contract, poses an intriguing question: does the "officer removal" statute, 28 U.S.C. § 1442(a)(1), permit a federal official, sued only in her representative capacity, to remove an action to federal district court? Because we think that the statute does not confer such a right, and because there is no other cognizable basis for federal jurisdiction, we return the case to the district court with instructions that it be remitted to a state forum.

I

From 1917 until 1977, a succession of dye-houses occupied a thirty-five acre plot in Ashland, Massachusetts. During these six decades, toxic wastes impregnated the site. Eventually, the United States Environmental Protection Agency (EPA) and the Massachusetts Department of Environmental Protection (DEP) discovered the pollution and documented its source in the dye manufacturing processes. In early 1982, EPA notified Nyacol Products, Inc. (Nyacol), a producer of colloidal silicas at a portion of the site, that it considered Nyacol a potentially responsible party (PRP) under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9626, 9651–9661, 9671–9675.[1]

1. EPA also branded two of Nyacol's officers, Robert Lurie and Thomas L. O'Connor, as PRPs.

Pursuant to Massachusetts law, which deems PRP notices equivalent to law suits for the purpose of triggering an insurer's duty to defend, *see Hazen Paper Co. v. United States Fid. & Guar. Co.*, 407 Mass. 689, 555 N.E.2d 576, 581 (1990), Nyacol called upon its insurance carrier, plaintiff-appellant American Policyholders Insurance Company (American), to defend it against EPA's claims and to indemnify it for loss, costs, damages, or other expense related thereto. American provisionally undertook the company's defense under its general liability policy. In December of 1991, American brought suit in a Massachusetts state court seeking a declaration that it had no obligation to defend or recompense its insureds. In addition to naming the insureds as parties defendant, American joined two other defendants: Julie Belaga, in her capacity as EPA's Regional Administrator, and Daniel S. Greenbaum, in his capacity as Commissioner of the DEP. Invoking the officer removal statute, 28 U.S.C. § 1442(a)(1), Belaga transferred the action to federal district court.[2]

On February 20, 1992, DEP agreed to be bound by a declaration of rights in American's lawsuit insofar as the judgment resolves insurance coverage issues. The case proceeded against Belaga and the insureds. On May 12, 1992, the district court granted Belaga's motion to dismiss, reasoning that a suit against her, in her official capacity, was really a suit against EPA and that, since EPA had never sued Nyacol or brought an enforcement proceeding against it, American could articulate no justiciable controversy with EPA. The court entered final judgment for Belaga, see Fed.R.Civ.P. 54(b), and remanded all other parties and claims to the state court. American appeals from the dismissal order.

## II

While the parties vigorously debate an insurance company's ability, consistent with Article III's case or controversy requirement, to join EPA in a coverage dispute before EPA has brought an enforcement action against the insureds, our discussion seeps into vastly different legal ground. The impetus behind this diversion lies in the Supreme Court's opinion in *International Primate Protection League v. Administrators of Tulane Educ. Fund*, — U.S. ——, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991). Concerned about the implications of *Primate Protection League* for federal court jurisdiction, we requested supplemental briefing on whether this action was properly removed to federal court. Both sides responded that removal was valid under 28 U.S.C. § 1442(a)(1) because of Belaga's status as a federal officer.

■ Notwithstanding this accord, we must pursue the matter. Litigants cannot confer subject matter jurisdiction by agreement. *See Insurance Corp. of Ir. v. Compagnie des Bauxites*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *California v. LaRue*, 409 U.S. 109, 113 n. 3, 93 S.Ct. 390, 394 n. 3, 34 L.Ed.2d 342 (1972). Because a federal court is under an unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate, we are obliged to address the propriety of removal as a threshold matter even though neither party has raised a question in that regard. *See Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct.

---

Lurie and O'Connor are named as defendants in the instant suit. For ease in reference, we refer to the company and the individual defendants, collectively, as "Nyacol" or "the insureds." We note, moreover, that although EPA, invoking a theory of successor liability, notified these three defendants that they might be liable for EPA's response costs (past and future), as well as for cleanup costs, EPA has not yet sued to compel payment of these expenses or otherwise to enforce its claimed rights.

2. The officer removal statute provides in pertinent part:

A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office....

28 U.S.C. § 1442(a)(1) (1988).

510, 511, 28 L.Ed. 462 (1884) (stating that a federal appellate court, on its own motion, must "deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record").

## A

■ The officer removal statute, 28 U.S.C. § 1442(a)(1), quoted *supra* note 2, is designed to allow federal officers to remove actions to federal court that would otherwise be unremovable. *See Willingham v. Morgan,* 395 U.S. 402, 406–07, 89 S.Ct. 1813, 1815–16, 23 L.Ed.2d 396 (1969) (stating that the section covers all cases in which federal officers, sued in state court, "can raise a colorable defense arising out of their duty to enforce federal law").[3] In *Primate Protection League,* the Supreme Court held that the reference to "any agency" of the United States contained in the officer removal statute did not stand alone, but constituted part of a possessive phrase modifying the noun "officer." *See —— U.S. at ——,* 111 S.Ct. at 1705. Put another way, the statute is to be read as if a second "of" appeared in the text immediately following the disjunctive "or." Hence, section 1442(a)(1) permits removal by an "officer of ... any agency [of the United States]," and, conversely, does not permit removal by the federal agency itself. *See id.* at ——, 111 S.Ct. at 1709.

■ Although *Primate Protection League* makes it crystal clear that EPA, as a federal agency, cannot remove an action to federal court under color of section 1442(a)(1), this case presents a variation on the theme: it requires that we decide the closely related, but nonetheless different, question of whether, for purposes of the officer removal statute, a suit brought against an executive of an agency, *exclusively in the executive's official capacity,* constitutes a suit against an "officer," thereby permitting removal under the statute, or a suit against an "agency," thereby precluding such removal. It is to this inquiry that we now turn.[4]

## B

■ Generally, a suit against an officer in the officer's official capacity constitutes a suit against the governmental entity which the officer heads. For example, in *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Court dwelt on the distinction between suits against a person in an individual, as opposed to official, capacity. The Court explained that while individual-capacity actions "seek to impose *personal* liability upon a government official," *id.* at 165, 105 S.Ct. at 3105 (emphasis supplied), payable out of personal assets, *see id.* at 166, 105 S.Ct. at 3105, an official-capacity action is, "in all respects other than name, to be treated as a suit against the entity." *Id.* Phrased differently, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978). Thus, a string of Supreme Court cases holds that a suit against a government officer in his or her official capacity binds the agency or other governmental entity, not the officer personally. *See, e.g., Graham,* 473 U.S. at 166, 105 S.Ct. at 3105; *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985); *cf. Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 687, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949) (explaining that, in deciding whether a suit against a government officer is an official-capacity or individual-capacity suit, "the crucial question is whether the relief sought ... is relief against the sovereign").

---

**3.** This is not to say that *every* case in which a federal officer is a defendant is removable. Rather, removal is limited to situations in which the officer's removal petition demonstrates the existence of a federal defense. *See Mesa v. California,* 489 U.S. 121, 136, 109 S.Ct. 959, 968, 103 L.Ed.2d 99 (1989).

**4.** The officer removal statute was first enacted in its present form in 1948. Its legislative history is of no significant assistance in respect to the inquiry at hand.

The character of an official-capacity suit is not transformed simply because jurisdiction is in issue. In *Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), a case in which the plaintiff sued the Postmaster General in his official capacity, the Court held that acts of a government officer in his official capacity "are always chargeable" as acts of the agency for purposes of a sue-and-be-sued clause. *Id.* at 563 n. 8, 108 S.Ct. at 1973 n. 8; *see also FHA v. Burr*, 309 U.S. 242, 249–50, 60 S.Ct. 488, 492–93, 84 L.Ed. 724 (1940) (holding that a suit against the head of an agency in his official capacity was indistinguishable from a suit against the agency itself for purposes of a sue-and-be-sued clause and that a waiver of immunity as to the agency head necessarily waived the agency's immunity). Similarly, even when pondering jurisdictional and quasi-jurisdictional issues, this court has consistently accepted and applied the principle that an official-capacity suit against a government officer is fully equivalent to a suit against the agency. *See, e.g., Northeast Fed. Credit Union v. Neves*, 837 F.2d 531, 533 (1st Cir.1988) ("Where ... claims are made against a government official acting purely in a representative role, the suit must be regarded as one against the sovereign."); *Culebras Enters. Corp. v. Rivera Rios*, 813 F.2d 506, 516 (1st Cir.1987) (observing that, for Eleventh Amendment purposes, an official-capacity suit is "tantamount to a suit against the [governmental entity]").

We see no reason to forsake the general rule—that a suit against a government officer in his or her official capacity is a suit against the agency—when considering the appropriateness of removal under 28 U.S.C. § 1442(a)(1). The theme of *Primate Protection League*, logically extended, serves an esemplastic purpose, shaping the officer removal statute into a rational whole. In

that case, the Supreme Court explained that when a suit for monetary damages is brought against an officer in his or her individual capacity, the complicated questions that arise as to that officer's immunity support a protective grant of removal jurisdiction. *See Primate Protection League*, —— U.S. at ——, 111 S.Ct. at 1708. By contrast, agencies do not need the prophylaxis of federal removal because determining an agency's immunity, unlike determining an individual's immunity, is a "sufficiently straightforward" proposition. *Id.* That rationale strongly favors treatment of official-capacity suits for purposes of removal in the same manner as suits against the agency. After all, because a suit against an officer in her official capacity cannot bind the officer personally, *see, e.g., Brandon*, 469 U.S. at 471, 105 S.Ct. at 877, no issues of immunity can possibly arise that differ from those arising in a suit directly against the agency.

■■■ Consistency is the touchstone of statutory interpretation. If we were to hold that a suit nominally against EPA is not removable, as *Primate Protection League* demands, but then go on to hold that a suit nominally against EPA's regional administrator in her official capacity—a suit that seeks a judgment binding on the EPA—is nonetheless removable, we would spawn a glaring interpretive inconsistency and, in the bargain, impugn the *Primate* Court's reasoning. Given the identity of juridical interest that exists between a government agency and its executive officer when the latter is sued only in his or her official capacity, the fact that the agency may not remove an action under the officer removal statute compels the conclusion that an official-capacity defendant is likewise disabled from initiating removal thereunder.[5] *See generally Primate Protection*

---

**5.** Ordinarily, the question of whether a complaint names an officer in a personal, as opposed to an official, capacity requires little more than a glance at the pleadings. If, however, a federal official, reasonably believing himself or herself to be sued individually, attempts to remove under section 1442(a)(1), any dispute as to the officer's status will necessarily be resolved by a federal court in the context of assaying its

own jurisdiction. *See* 14A Charles A. Wright et. al., *Federal Practice and Procedure* § 3730, at 499–500 (explaining that a defendant wishing to remove need only file a notice of removal, with the result that the propriety of removal, if challenged at all, will "be tested later in the federal court by a motion to remand"). Thus, our holding that an officer sued in an official capacity may not remove the action in order to obtain a

*League,* —— U.S. at ——, 111 S.Ct. at 1708 (explaining that access to removal under section 1442(a)(1) does not turn on a "mere technicality").

## C

Our conclusion is fortified by Judge Posner's opinion in *Western Secs. Co. v. Derwinski,* 937 F.2d 1276 (7th Cir.1991). There, the Seventh Circuit, acting *sua sponte,* refused to allow a federal administrator sued in his official capacity to remove an action to federal court under section 1442(a)(1). Acknowledging that, in the aftermath of *Primate Protection League,* suits against federal agencies cannot be removed under section 1442(a)(1), *see id.* at 1278, Judge Posner wrote that "while the suit in this case is nominally against the Administrator, it is against him in his official capacity and such suits are considered to be against the government itself." *Id.* at 1279. Thus, the court concluded that, absent an alternative basis for jurisdiction, dismissal for want of subject matter jurisdiction would be required. *See id.*[6]

We agree with the Seventh Circuit that *Primate Protection League,* logically extended, mandates that a federal officer sued solely in his or her official capacity may not remove a suit to federal court under the aegis of 28 U.S.C. § 1442(a)(1). In the case before us, this holding draws the sap from the tree: American's suit, brought against Belaga in her official capacity and seeking no relief against her personally, is in reality a suit against the agency. It necessarily follows that, because EPA itself could not have removed this action under section 1442, *see Primate Protection League,* —— U.S. at ——, 111 S.Ct. at 1708, Belaga's attempt to remove under the same statutory provision must fail.

## III

Notwithstanding that this action was infelicitously removed under 28 U.S.C. § 1442(a)(1) and that the parties steadfastly disclaim any independent basis for federal jurisdiction,[7] we inquire whether any other toehold for federal court jurisdiction exists. Belaga's notice of removal did mention 28 U.S.C. § 1441—a statute which permits removal of any suit that originally could have been brought in federal court.[8] *See, e.g., Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986). Thus, principles of equity, as well as the law, compel us to explore whether American's declaratory judgment action falls within the federal district court's original jurisdiction. We proceed to run that gauntlet.

## A

■■■■■ In this instance, the presence of original jurisdiction hinges upon the exis-

---

federal forum for resolution of the underlying merits will in no way deprive the officer of access to a federal forum for determination of whether the suit is in fact an action against him or her personally. By the same token, if an officer is sued in both individual and official capacities, we see no bar to removal under section 1442(a)(1). *See El Gran Video Club Corp. v. E.T.D., Inc.,* 757 F.Supp. 151, 155 & n. 3 (D.P.R.1991) (observing that federal courts have removal jurisdiction over all pendent claims that are not "separate and independent").

**6.** In *Derwinski* the court retained jurisdiction because the plaintiff's action arose under federal law. *See Derwinski,* 937 F.2d at 1280; *see also* 28 U.S.C. §§ 1331, 1441 (1988).

**7.** The parties' appellate filings ground removal jurisdiction solely in the officer removal statute. In answer to our express inquiry anent jurisdic-

tion, Belaga replied that the United States, on her behalf, removed the action pursuant to 28 U.S.C. § 1442(a)(1) and contended that such removal was proper. American averred that, apart from the officer removal statute, it was "not aware of any other basis for federal jurisdiction." Nyacol, by electing not to participate in this appeal, has effectively consented to the appropriateness of a state forum.

**8.** The statute provides in pertinent part:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (1988).

tence *vel non* of a federal question,[9] that is, the existence of an action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1988). Ordinarily, a claim arises under federal law within the meaning of section 1331 if a federal cause of action appears on the face of a well-pleaded complaint. *See Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936); *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). For purposes of determining the existence of federal question jurisdiction in a declaratory judgment action, however, the Supreme Court directs our attention away from the face of the complaint and focuses it instead on the law that creates the underlying cause of action:

> Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction....

*Public Service Comm'n v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952); *see also Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 15–16 & n. 14, 103 S.Ct. 2841, 2849–2850 & n. 14, 77 L.Ed.2d 420 (1983).

■ Here, American's declaratory judgment action represents a mounted offensive on two related fronts: the suit is not only an attempt to preempt impending actions by the insureds (seeking, presumably, to secure a defense against charges of environmental harm and to secure indemnification with respect to loss, costs, damages, and expense associated therewith), but it is also an attempt to foreclose governmental authorities from trying to reach insurance proceeds to satisfy as-yet-unrealized judgments under CERCLA. Thus, the underlying causes of action, howsoever visualized, are in the nature of claims to enforce an insurance contract, the adjudication of which will require interpretation of various policy provisions and contract terms. A suit is customarily deemed to arise under the law that gives birth to the cause of action. *See American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). Applying that approach, this case is based solely upon, and, therefore, arises under, state law.[10] *See CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*, 962 F.2d 77, 97–98 (1st Cir.1992) (divining applicable state law to interpret a pollution exclusion clause in an insurance policy); *A. Johnson & Co. v. Aetna Cas. & Sur. Co.*, 933 F.2d 66, 70–74 (1st Cir.1991) (same); *Ryan v. Royal Ins. Co.*, 916 F.2d 731, 734–35 (1st Cir.1990) (similar); *In re Acushnet River & New Bedford Harbor*, 725 F.Supp. 1264, 1278–81 (D.Mass.1989) (certifying various questions regarding the substantive interpretation of an insurance policy to the Massachusetts Supreme Judicial Court in order to determine an insurer's duty to cover cleanup costs), *aff'd in part and rev'd in part on other grounds sub nom. Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.*, 938 F.2d 1423 (1st Cir.1991), *cert. denied,* ─── U.S. ───, 112 S.Ct. 969, 117 L.Ed.2d 134 (1992); *see also Hudson Ins. Co. v. American Elec. Corp.*, 957 F.2d 826, 828 (11th Cir.) (holding that an insured's potential suit to recover insurance proceeds for its liability under CERCLA arises under "the applicable state law governing the in-

---

9. The parties to the lawsuit are not of totally diverse citizenship and, apart from the possibility of a federal question, there is no other arguable foundation for federal jurisdiction.

10. We note in passing that, were American to assert that CERCLA preempts state insurance actions, such an assertion, while mentioning federal law, would be insufficient to confer jurisdiction because federal law would come into play only as a defense. *See Franchise Tax Bd.*, 463 U.S. at 13–14, 103 S.Ct. at 2848–2849; *Nash-*

*oba Communications, Inc. v. Town of Danvers*, 893 F.2d 435, 440 (1st Cir.1990); *see also Hudson Ins. Co. v. American Elec. Corp.*, 957 F.2d 826, 830 n. 4 (11th Cir.), *cert. denied,* ─── U.S. ───, 113 S.Ct. 411, 121 L.Ed.2d 336 (1992). We except, of course, the rare case, discussed *infra* p. 1263, where federal law so completely displaces state causes of action in a particular area that all such claims are "necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1564, 95 L.Ed.2d 55 (1987).

terpretation of insurance contracts"), *cert. denied*, —— U.S. ——, 113 S.Ct. 411, 121 L.Ed.2d 336 (1992). Federal jurisdiction cannot take root in this arid soil.[11]

## B

■■ In an abundance of caution, we take one additional step. There may exist unusual circumstances wherein a state-created cause of action can be deemed to arise under federal law. For example, when a plaintiff's state-created right to relief "necessarily depends on resolution of a substantial question of federal law," *Franchise Tax Bd.*, 463 U.S. at 28, 103 S.Ct. at 2856, or when a parallel "federal cause of action completely pre-empts a state cause of action," *id.* at 24, 103 S.Ct. at 2854, the suit is considered a creature of federal law. We test these waters.

The latter proposition (complete preemption) can be summarily dismissed. Structurally, CERCLA provides "no parallel federal cause of action *for the recovery of insurance proceeds for CERCLA-created liability.*" *Hudson*, 957 F.2d at 830. Rather, its provisions, read objectively, choreograph a *pas de deux* wherein CERCLA-driven suits to collect insurance proceeds are to be brought under state law. *See, e.g.*, 42 U.S.C. § 9607(e)(1) (preserving "any agreement to insure, hold harmless, or indemnify a party" for CERCLA liability). We turn, then, to the former proposition (necessary dependence on a federal-law question).

Conceivably, American might argue that a suit to compel it to defend and/or indemnify its insureds is one that, though created by state law, necessarily turns on federal common law. However, such an argument amounts to a call for the application of a uniform federal rule of decision to govern interpretation of an insurance policy's scope of coverage vis-a-vis CERCLA liabili-

ty. We decline to heed that call in the face of solid precedent pointing in the opposite direction. The massed authority for treating insurance coverage questions in CERCLA cases as peculiarly matters of state law pervades the courts of appeals. *See, e.g., Northbrook*, 962 F.2d at 79; *Northern Ins. Co. v. Aardvark Assocs., Inc.*, 942 F.2d 189, 192 (3d Cir.1991); *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1157 (4th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 78, 121 L.Ed.2d 42 (1992); *FL Aerospace v. Aetna Cas. & Sur. Co.*, 897 F.2d 214, 219 (6th Cir.), *cert. denied*, 498 U.S. 911, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990); *Aetna Cas. & Sur. Co. v. General Dynamics Corp.*, 968 F.2d 707, 710 (8th Cir.1992); *Industrial Indemnity Ins. Co. v. Crown Auto Dealerships, Inc.*, 935 F.2d 240, 241 (11th Cir.1991). State courts chime in tune. *See, e.g., Hazen Paper*, 555 N.E.2d at 579; *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wash.2d 869, 784 P.2d 507, 509 (1990); *Technicon Elecs. Corp. v. American Home Assurance Co.*, 74 N.Y.2d 66, 544 N.Y.S.2d 531, 533–34, 542 N.E.2d 1048, 1050–51 (N.Y.1989).

Case law aside, we doubt that Congress intended CERCLA to be the springboard for catapulting federal courts into what has historically been a state-law preserve. Congress has made it plain that federal legislation should rarely be interpreted to encroach on a state's regulation of insurance. *See, e.g.*, McCarran–Ferguson Act, 15 U.S.C. § 1012(b) (1988). Nothing in CERCLA suggests that Congress intended to deviate from this regimen. Indeed, CERCLA's text not only envisions the bringing of suits under state law but specifically mandates their resolution in accordance with that law. *See* 42 U.S.C. § 9672(a) (stating that CERCLA's insurance subchapter "shall [not] be construed to affect ... the law governing the inter-

---

11. We note that CERCLA itself does not provide a direct cause of action against a responsible party's liability insurer. *See Port Allen Marine Servs., Inc. v. Chotin*, 765 F.Supp. 887, 889 (M.D.La.1991) (dismissing claims brought directly against carrier because CERCLA "does not create a direct right of action against [PRP's] insurers"); *cf.* 42 U.S.C. § 9608(c) (al-

lowing direct action against guarantors in limited circumstances). It is, therefore, abundantly clear that American's declaratory judgment complaint anticipates future coercive actions that not only will be entirely governed by state law, but also will be initiated only through state-created mechanisms.

pretation of insurance contracts of any State"). Thus, CERCLA effectively rebuts the claim that its drafters intended to transform state-law insurance actions into actions arising under federal law.

We think that the situation at hand is closely analogous to that which confronted us in *Royal v. Leading Edge Prods., Inc.,* 833 F.2d 1 (1st Cir.1987). There, a plaintiff sought to recover for breach of a royalty agreement related to a copyrighted work. In an effort to maintain federal jurisdiction, he argued that his case arose under the federal copyright laws. *See id.* at 2. We disagreed, pointing out that when an action is brought to enforce a royalty contract the action arises out of the contract and not under the copyright statute, even though the contract concerns a copyright. *See id.* at 4. By the same token, an action brought to enforce the *pollution-coverage* provisions of an insurance policy arises out of the policy and not under federal environmental law, even though any potential recovery under the policy will satisfy a CERCLA-generated liability. *Accord Hudson,* 957 F.2d at 829–30. In this case, as in *Royal,* it would be wrong to arrogate unto the federal courts "jurisdiction over what is essentially a garden-variety contract dispute." *Royal,* 833 F.2d at 5.

In fine, because the insurance dispute which American's declaratory judgment action anticipates is a creature of state law and cannot be said to arise under federal law, original federal question jurisdiction—and, by extension, removal jurisdiction under 28 U.S.C. § 1441(a)—does not lie.

## IV

Since neither section 1442 nor section 1441 supports the removal of American's declaratory judgment action, there is simply no serviceable hook on which federal jurisdiction can be hung. We, therefore, go no further. Inasmuch as the lower court lacked subject matter jurisdiction, its order dismissing the action against EPA is

null. *See Insurance Corp. of Ir.,* 456 U.S. at 701, 102 S.Ct. at 2103 ("The validity of an order of a federal court depends upon that court's having jurisdiction over ... the subject matter...."). We vacate the dismissal order and direct that the district court reinstate Belaga, in her official capacity, as a party and thereafter return the improvidently removed action to the court from whence it emanated.[12]

*Vacated and remanded with directions. No costs.*

## ORDER OF THE COURT

The petition for rehearing with suggestion for rehearing en banc filed by appellee Belaga is, under this court's internal operating procedures, considered both by the panel and by the full court. Panel rehearing is hereby *denied* for the following reasons.

First, a party may not raise new and additional matters for the first time in a petition for rehearing. *See Kale v. Combined Ins. Co.,* 924 F.2d 1161, 1169 (1st Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 69, 116 L.Ed.2d 44 (1991); *Anderson v. Beatrice Foods Co.,* 900 F.2d 388, 397 (1st Cir.), 498 U.S. 891, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990). That rule has particular pertinence here because, following oral argument, the panel invited supplemental briefing on the specific question of federal court removal jurisdiction in light of *International Primate Protection League v. Administrators of Tulane Educ. Fund,* — U.S. —, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991). Appellee's response at the time was a perfunctory one; none of the arguments raised in her rehearing petition were alluded to in her supplemental brief, even in passing. We will not revisit specific issues merely because an adverse result has infused new vigor into a discontented party's advocacy.

Second, even if we were to consider them, appellee's substantive arguments in no way undermine the force of the panel

---

**12.** We take no view of Belaga's claims of sovereign immunity, non-justiciability, unripeness and the like. We are similarly noncommittal as to the effect, if any, of remand on the stipulation entered into between American and DEP. Because the federal courts lack jurisdiction, all such matters must be presented to, and resolved by, the state courts.

opinion. Only one such argument merits additional comment. The cynosure of Belaga's petition is her newly emergent contention that the panel's treatment of *Primate Protection League* is insupportable because, she maintains, suits against officers in their official capacities are not equivalent to suits against the agency. Relying primarily on *Kozera v. Spirito,* 723 F.2d 1003 (1st Cir.1983), a pre-*Primate Protection League* case discussing what is loosely termed an "exception[ ] to the doctrine of sovereign immunity ... in injunctive suits against federal officials," *id.* at 1008 (applying *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689–90, 69 S.Ct. 1457, 1461–62, 93 L.Ed. 1628 (1949)), Belaga disputes the statement that "no issues of immunity can possibly arise [in official-capacity suits] that differ from those arising in a suit directly against the agency." *Ante* at 1260. Belaga's reliance on *Larson* and its progeny, such as *Kozera,* is misplaced.

Whatever consequences the *Larson* exception may portend in a proper case, it has no applicability here. *Larson* comes into play when either (1) a federal officer acts in excess of his or her statutory authority, or (2) the statute conferring power upon the officer is unconstitutional, *see Kozera,* 723 F.2d at 1008; *see also Larson,* 337 U.S. at 689–90, 69 S.Ct. at 1461–62. The basis for the exception is clear; where the *Larson* criteria are met, "the conduct against which specific relief is sought is beyond the officer's powers and is, therefore, not the conduct of the sovereign." *Larson,* 337 U.S. at 690, 69 S.Ct. at 1461; where the criteria are not met, however, an official-capacity "suit is barred, not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction." *Id.* at 688, 69 S.Ct. at 1460. Clearly, then, the *Larson* exception concerns the doctrine of governmental, not official, immunity. Where relief would not be obtainable against the agency, as such because of sovereign immunity, the exception nevertheless enables a plaintiff to obtain specific relief when an officer is named *and* the case's underlying merits satisfy one of the two conditions described above. *See id.* at 689–90, 69 S.Ct. at 1461–62. Viewed in this manner—as a way around the sovereign immunity of agencies—*Larson* erects no shield for protecting individual officers from the impact of lawsuits and, indeed, enunciates no rule bearing thereon.

This is all distant from the jurisdictional issue on which the instant case turns. The functional purpose of the officer removal statute, as expressed in *Primate Protection League,* is to guarantee the availability of a federal forum for the resolution of complicated questions of immunity, *see* —— U.S. at ——, 111 S.Ct. at 1708, not to guarantee such a forum for litigation of the underlying merits of every suit against a government actor. When a case, like this one, poses no special questions of immunity as the federal officer/defendant was sued purely in her representative capacity, the defendant must be content with the plaintiff's choice of a state judicial forum to resolve a state-law claim. Belaga points to nothing that can affect her, personally, in any way that would differ from how the agency would be affected, and, as we have made clear, *ante* at 1258, 1260, the complaint in this case seeks relief against the sovereign, not· against Belaga personally.

We add one final observation. To a large extent, Belaga's belated reference to *Larson* stirs a tempest in a teapot. Whenever a complaint raises a federal question, which will almost always be the case when *Larson* applies, removal is allowed under 28 U.S.C. § 1331. Our decision that official-capacity suits are not removable as such under 28 U.S.C. § 1442(a)(1) will only affect those cases in which an officer is sued in his or her official capacity by a plaintiff whose complaint raises only issues of state law. This case is prototypical of that genre.

The petition for panel rehearing is *denied.*