**Sherry D. THOMAS, both individually and on behalf of all other persons similarly situated, Plaintiff,**

v.

**NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, Defendant, and**

**Secretary, United States Department of Agriculture, Mike Espy, Intervenor–Defendant.**

Civ. No. 2:94CV00185.

United States District Court, M.D. North Carolina, Greensboro Division.

May 3, 1995.

Stanley B. Sprague, Brenda Bergeron, Central Carolina Legal Services, Inc., Greensboro, NC, for Sherry D. Thomas.

Elizabeth Oxley, N.C. Department of Justice, Raleigh, NC, for North Carolina Department of Human Resources.

John W. Stone, Jr., Office of U.S. Attorney, Greensboro, NC, Thomas Millet, Civil Division, Dept. of Justice, Federal Programs Branch, Washington, DC, John Koch, Office of General Counsel, Department of Agriculture, Washington, DC, Jessica A. Lerner, Civil Division, Dept. of Justice, Federal Programs Branch, Washington, DC, for United States Department of Agriculture, Mike Espy, Secretary.

## MEMORANDUM OPINION

BULLOCK, Chief Judge.

In this case this court is asked to determine the effect of a North Carolina Court of Appeals decision on the subsequent actions of a state agency. As discussed below, the court will not reach this issue because of a lack of subject matter jurisdiction.

## I. FACTS

### A. History of the Present Case

In August 1989, the North Carolina Department of Human Resources ("NCDHR"), through a hearing held by the Guilford County Department of Social Services, found that Edith Anderson intentionally failed to report a member of her household's income as required in her food stamp application. As this was Anderson's second intentional violation, Anderson was disqualified from receiving food stamps for twelve months pursuant to a provision of the Food Stamp Act, 7 U.S.C. § 2015(b)(1). Anderson was not participating in the food stamp program at the time of her disqualification.

When Anderson reapplied for food stamps in January 1991, NCDHR denied Anderson's application for benefits and informed her that, pursuant to federal and state regulations, her twelve-month disqualification did not begin until the day she reapplied. 7 C.F.R. § 273.16(e)(8)(iii) provides that "[i]f the individual is not eligible for the Program at the time the disqualification period is to begin, the period shall be postponed until the individual applies for and is determined eligible for benefits." *See also* 7 C.F.R. § 273.16(a)(1) (similar provision). Similarly, North Carolina Food Stamp Manual ("NCFSM") § 6513.A.2 provides that "[i]f the individual [subject to the disqualification penalty for intentional violators] is not eligible for the Program at the time the disqualification period begins, the period is postponed until the individual is eligible."

In July 1991, Anderson filed a complaint in Guilford County Superior Court against NCDHR. She alleged that NCDHR's denial of her application violated the Food Stamp

Act, specifically 7 U.S.C. § 2015(b)(1). Section 2015(b)(1) provides that "[a]ny person who has been found ... to have intentionally (A) made a false or misleading statement ... for the purpose of ... receiving ... coupons ... shall, immediately upon the rendering of such determination, become ineligible for further participation in the program ... (ii) for a period of one year upon the second occasion of any such determination." The superior court upheld the denial of Anderson's application.

Anderson filed an appeal to the North Carolina Court of Appeals. On April 10, 1993, the court of appeals held that § 2015(b)(1) "requires that food stamp disqualification periods begin immediately upon a finding that a violation has been committed." *Anderson v. North Carolina Dep't of Human Resources,* 109 N.C.App. 680, 682, 428 S.E.2d 267, 268 (1993). The court reversed the trial court and remanded for entry of summary judgment in favor of Anderson. *Id.* at 683, 428 S.E.2d at 270.

The court of appeals, in addressing the issue of whether "the regulation conflicts with the statute and as such is an invalid construction of Congress' intent," *id.* at 682, 428 S.E.2d at 269, examined § 2015(b)(1) and 7 C.F.R. § 273.16(e)(8)(iii) under the two-step analysis set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44 & n. 9, n. 11, 104 S.Ct. 2778, 2781–83 & n. 9, n. 11, 81 L.Ed.2d 694 (1984). *See K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291–92, 108 S.Ct. 1811, 1817–18, 100 L.Ed.2d 313 (1988); *Maryland Dep't of Human Resources v. United States Dep't of Agriculture,* 976 F.2d 1462, 1469–70 (4th Cir.1992). The court of appeals found that the issue "is clearly resolved by the statute":

> The language of [§ 2015(b)(1) ] requires a penalty of a specified period of time, to commence immediately upon a determination that a food stamp recipient has violated the provisions of the Food Stamp Act. Furthermore, the statute provides that the period of ineligibility 'shall remain in effect, without possibility of administrative stay, unless and until the finding upon which the ineligibility is based is subse-

quently reversed by a court....' 7 U.S.C.A. § 2015(b)(3) (1991). Thus, it is clear that the subject regulation does not 'give effect to the unambiguously expressed intent of Congress' because it mandates what the statute clearly prohibits: postponement of the disqualification period.

*Anderson,* 109 N.C.App. at 683, 428 S.E.2d at 269. NCDHR did not seek review by the North Carolina Supreme Court of the *Anderson* decision and provided Anderson with the food stamps that she sought.

In October 1993, Anderson's attorney filed a Petition for Rule–Making under N.C.Gen. Stat. § 150B–20(a), requesting that NCDHR remove NCFSM § 6513.A.2 from the NCFSM, cease all further application of NCFSM § 6513.A.2, and adopt a proposed rule conforming to the court of appeals decision. NCDHR denied the petition in December 1993. In denying the petition, NCDHR sent Anderson's attorney a letter stating that the

> petitions were denied based upon the Commission's opinion that it lacks the statutory authority to enact the amendments you requested. Moreover, the Food Stamp Manual is presently consistent with federal law. The change you seek would cause the State to be out of compliance with (sic), which would likely result in a loss of federal funding. It is also noted that ... *Anderson v. [NC]DHR* [was] not [a] class action law suit[ ].

Thereafter, Anderson filed the present class action suit in Guilford County Superior Court against NCDHR. In her complaint, Anderson asked the court to order NCDHR to adopt the regulation proposed by the October 1993 petition, certify a class, issue an injunction requiring NCDHR to reopen the cases of all class members as of the filing date of *Anderson* and issue any food stamps that they would have received had their disqualification periods begun immediately, and issue a declaratory judgment that NCDHR was required to comply with *Anderson* in subsequent similar cases before NCDHR. The Secretary of the United States Department of Agriculture moved to intervene. The superior court granted the Secretary's

motion to intervene in April 1994. The Secretary then removed the case to this court, ostensibly pursuant to 28 U.S.C. §§ 1441(b) and 1442(a)(1). In July 1994, Sherry D. Thomas was substituted for Edith Anderson as named plaintiff. Thomas' complaint alleges that postponement of the disqualification period pursuant to the state regulations at issue wrongfully deprived her of one month of food stamps.

Both Plaintiff and Defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## B. The Food Stamp Act

In order to "safeguard the health and well-being of the Nation's population," 7 U.S.C. § 2011, Congress enacted the Food Stamp Act ("the Act"), 7 U.S.C. §§ 2011–2032. The Act established a federally-funded state-administered program to supplement the nutritional needs of low income households. *Id.* § 2011. Eligible households receive coupons which may be used to purchase food from approved retail stores. *Id.* § 2013(a). The program is funded entirely by the federal government through the United States Department of Agriculture. *Id.* § 2027. State agencies, *e.g.*, the NCDHR, administer the program, making determinations of eligibility and distributing coupons to program participants. *Id.* § 2020. However, in administering the program, the state agencies are required to adhere to uniform national standards of eligibility as established by the Secretary of Agriculture. *Id.* § 2014(b). The Act provides for injunctive relief and withholding of funds from a state that, "without good cause," does not comply, *inter alia*, with the Act and regulations issued pursuant to the Act. *Id.* § 2020(g).

## II. ANALYSIS

■ "Because a federal court is under an unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate, [the court is] obliged to address the propriety of removal as a threshold matter even though neither party has raised a question in that regard." *American Policyholders Ins. Co. v. Nyacol*

*Prods.*, 989 F.2d 1256, 1258 (1st Cir.1993) (citing *Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511–12, 28 L.Ed. 462 (1884)), *cert. denied sub nom. Keough v. American Policyholders Ins. Co.*, —— U.S. ——, 114 S.Ct. 682, 126 L.Ed.2d 650 (1994); *see also Capitol Credit Plan, Inc. v. Shaffer*, 912 F.2d 749, 750 (4th Cir.1990) (citing *Swan*, 111 U.S. at 382, 4 S.Ct. at 511–12). The court will examine the propriety of both purported bases for removal jurisdiction.

28 U.S.C. § 1442(a)(1) provides that

[a] civil action ... commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office....

Section 1442(a)(1) "is a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant." *Mesa v. California*, 489 U.S. 121, 136, 109 S.Ct. 959, 968, 103 L.Ed.2d 99 (1989).

■ Although the Secretary of Agriculture intervened in the present case in his own name, "[o]fficial-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (quoting *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611); *see also Gray v. Laws*, 51 F.3d 426, 430–31 (4th Cir. 1995); *Giancola v. West Virginia Dep't of Public Safety*, 830 F.2d 547, 550 (4th Cir. 1987). A suit against an officer in the officer's official capacity is, "in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166, 105 S.Ct. at 3105. In the present case, the Secretary of the United States Department of Agriculture intervened as a defendant in his official capacity. Therefore, the court will treat the Secretary's intervention and removal in the

present case as an intervention and removal by the Department of Agriculture. *See American Policyholders*, 989 F.2d at 1260 ("The character of an official-capacity suit is not transformed simply because jurisdiction is in issue.").

▮▮▮ Section 1442(a)(1) does not permit removal by federal agencies. *International Primate Protection League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 76, 79–87, 111 S.Ct. 1700, 1703, 1705–10, 114 L.Ed.2d 134 (1991); *see also Guadalupe–Blanco River Authority v. City of Lytle*, 937 F.2d 184, 185–86 (5th Cir.1991); *American Policyholders*, 989 F.2d at 1259; *Western Sec. Co. v. Derwinski*, 937 F.2d 1276, 1278–79 (7th Cir.1991). Nor does § 1442(a)(1) permit removal by a federal officer nominally named as the defendant in the officer's official capacity where the suit is treated as a suit against the officer's agency. *American Policyholders*, 989 F.2d at 1259–61; *see also Western Sec.*, 937 F.2d at 1278–79. Allowing removal under § 1442(a)(1) by a federal officer named in his official capacity where such a suit is treated as a suit against the agency while refusing to allow removal by a federal agency "would spawn a glaring interpretive inconsistency and, in the bargain, impugn the *Primate* Court's reasoning." *American Policyholders*, 989 F.2d at 1260. Therefore, § 1442(a)(1) does not confer subject matter jurisdiction over the present case to this court.

The Secretary also cites 28 U.S.C. § 1441(b) as a basis for removal jurisdiction. Section 1441(b) provides, in pertinent part, that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." Thus, the court must determine whether it has "original jurisdiction" over the case at bar.

▮▮▮ The plaintiff is the master of her claims. *See generally* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3722 (1985 & Supp.1994). If the plaintiff chooses

not to assert a federal claim, a defendant cannot remove on the basis of a federal question even if the plaintiff could assert a federal claim. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987); *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 24, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913).

▮▮▮ In the case at bar, Plaintiff asks the court to order NCDHR, a state agency, to take actions that Plaintiff alleges are required of NCDHR by state law. Plaintiff sets forth five claims in her complaint. One of those claims is based on NCDHR's alleged violation of the "doctrine of precedent." The other four claims are based on NCDHR's alleged violations of the North Carolina Constitution. All of Plaintiff's claims turn on questions of North Carolina state law. These questions include issues regarding collateral estoppel and its application to a state agency, nonacquiescence to a state court decision by a state agency, and other state-law issues. In his briefs, Defendant Secretary has attempted to restate Plaintiff's claims into claims requiring interpretation of federal law. However, Plaintiff is the master of her claims, and Defendant Secretary's attempts in this regard must be rejected. Plaintiff's claims, as Plaintiff has stated them, do not require interpretation of federal law. The incongruity of a federal court determining the legal effect of a decision by the state court of appeals on a state agency's subsequent actions is apparent.[1] This case does not present a federal question and, therefore, § 1441(b) does not provide this court subject matter jurisdiction.

## III. CONCLUSION

Having determined that neither 28 U.S.C. § 1442(a)(1) nor 28 U.S.C. § 1441(b) confers subject matter jurisdiction, no other basis of subject matter jurisdiction is apparent to the court. 28 U.S.C. § 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Therefore, this case will be remanded to the court from which it was removed, the Gener-

---

1. The State appeared to waive any claim of Eleventh Amendment immunity in earlier pleadings.

al Court of Justice, Superior Court Division, Guilford County, North Carolina.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that this case be, and the same hereby is, **REMANDED** to the General Court of Justice, Superior Court Division, Guilford County, North Carolina.