James E. TURNER, Plaintiff,

v.

Winona E. RUBIN, Director, Department of Human Services, State of Hawai'i, Defendant and Third–Party Plaintiff,

v.

Mike ESPY, Secretary, United States Department of Agriculture, Third–Party Defendant.

Civ. No. 94–00127 DAE.

United States District Court, D. Hawai'i.

Sept. 9, 1994.

Tucker A. Dacey, Legal Aid Society of Hawai'i, Kaneohe, HI, for James E. Turner.

Robert A. Marks, Colleen L. Chun, Office of Atty. Gen., Honolulu, HI, for Winona E. Rubin, Director, Dept. of Human Services, State of Hawai'i.

Michael Chun, Elliot Enoki, U.S. Attys. Office, Honolulu, HI, Thomas Millet, Dept. of Justice, Civ. Div., Kathryn D. Ray, Dept. of Justice, John Koch, Office of Gen. Counsel, U.S. Dept. of Agriculture, Washington, DC, for Mike Espy, Sec. of Dept. of Agriculture.

### ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND

David Alan Ezra, District Judge.

The court heard the parties' motions on August 29, 1994. Tucker A. Dacey, Esq., appeared on behalf of plaintiff James E. Turner ("plaintiff"); Deputy Attorney General Colleen L. Chun appeared on behalf of defendant and third-party plaintiff Winona E. Rubin, Director of the Hawai'i Department of Human Services (hereinafter the "Director"); Kathryn D. Ray, Esq., appeared on behalf of third-party defendant Mike Espy, Secretary of the United States Department of Agriculture ("Secretary," or "Third–Party Defendant"). After reviewing the motion and the supporting and opposing memoranda, and hearing oral argument from counsel, the court GRANTS plaintiff's motion for remand.

### BACKGROUND

This action centers around the Hawai'i Department of Human Services' ("DHS's") efforts to recover from plaintiff the value of food stamps erroneously issued to him. On January 14, 1993, plaintiff applied for general assistance benefits which are available to cer-

tain disabled individuals under Hawai'i state law. According to plaintiff, on January 28, 1993, a state claims worker encouraged him to apply for food stamps even though plaintiff informed the claims worker that he had previously been told that he was not eligible to receive them. However, the claims worker apparently told plaintiff that the regulations had changed, and that plaintiff qualified for food stamps as a single head of a household. It is undisputed that the claims worker erroneously documented plaintiff as living with his sister and her minor children when, in fact (and as plaintiff had indicated on his application), his sister's children were not minors.

As a result of the claims worker's error, plaintiff was certified to receive food stamps effective February 1, 1993. On or about July 23, 1993, DHS discovered the error and notified plaintiff that he had been overpaid by $1,020.00. Plaintiff requested a hearing, and on September 30, 1993, DHS hearing officer Susan M.U. Wong found that plaintiff had indeed received food stamps from February through July 1993 based on DHS's flawed eligibility determination. The hearing officer gave plaintiff the option of contacting DHS within ten days in order to establish the eligibility of his sister's household (which included plaintiff) during the time period at issue. If plaintiff chose not to exercise this option, the hearing officer directed DHS to establish a claim against plaintiff for an overpayment of $951.00.[1] *See* DHS Administrative Decision of September 30, 1993, attached as Exhibit "2" to Third–Party Defendant's Motion, at 6–7. The hearing officer found that, under Haw.Admin.R. § 17–683–41, the DHS is required to take action to establish a claim against any household that receives an overpayment due to an inadvertent household or administrative error. *Id.* at 7.

On October 29, 1993, plaintiff filed a notice of appeal in the Circuit Court for the First Circuit, State of Hawai'i, claiming that DHS's administrative decision was clearly erroneous, and that the doctrine of equitable estoppel bars DHS from collecting the value of its

food stamp overissuance. On February 9, 1994, the Director filed a third-party complaint against the Secretary, alleging that the policies and procedures the plaintiff is challenging are undertaken pursuant to statutes and regulations promulgated by the Secretary, and that if plaintiff prevails in this action, the Secretary is liable to the Director for any relief the court may order.

On February 17, 1994, the Secretary removed the action to this court pursuant to 28 U.S.C. § 1442(a)(1). On April 11, 1994, plaintiff filed his Amended Motion to Strike or Dismiss Third–Party Complaint and/or for Remand. On April 12, the Secretary filed his Motion to Dismiss Plaintiff's Complaint and Third–Party Complaint.[2] The court consolidated the motions for hearing.

### Motion to Remand

■ The Secretary alleges that removal of this action from state court is appropriate pursuant to the officer removal statute, which provides, in pertinent part, as follows:

A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office....

28 U.S.C. § 1442(a) (1994). The officer removal statute is designed to allow federal officers to remove actions to federal court that would otherwise be unremovable. The United States Supreme Court has stated that § 1442(a)(1) covers all cases in which federal officers, sued in state court, "can raise a colorable defense arising out of their duty to enforce federal law." *See Willingham v. Morgan*, 395 U.S. 402, 406–07; 89 S.Ct. 1813, 1815–16, 23 L.Ed.2d 396 (1969). The officer removal statute thus "serves to overcome the 'well-pleaded complaint' rule which would

---

1. The hearing officer established an overpayment claim in the amount of $951.00 after allowing an offset for an underpayment of $69.00 in August 1993.

2. On May 17, 1994, the Director joined in the Secretary's Motion to Dismiss.

otherwise preclude removal even if a federal defense were alleged." *Mesa v. California*, 489 U.S. 121, 136, 109 S.Ct. 959, 968, 103 L.Ed.2d 99 (1989).[3] However, while § 1442(a)(1) allows removal by federal officers, the statute does not permit removal by the federal agency itself. *International Primate Protection League v. Tulane Educ. Fund*, 500 U.S. 72, 85–86, 111 S.Ct. 1700, 1709, 114 L.Ed.2d 134 (1991).[4]

In his Notice of Removal of Civil Action, the Secretary states that his defenses to plaintiff's state court action and to the third-party complaint arise out of federal law and are based on the following grounds:

1. The federal Food Stamp Act of 1977 (the "Act") authorizes the Secretary to formulate and administer a food stamp program;

2. The Act authorizes the Secretary to issue such regulations as he deems necessary to administer the food stamp program;

3. The entire cost of food coupons is paid with federal funds, and food coupons are obligations of the United States Treasury;

4. The Secretary directs and approves the States' administration of the food stamp program;

5. The Secretary has exercised his regulatory authority to require states to initiate and pursue the collection of overissuances caused by administrative errors in certain circumstances, and states have no discretion concerning whether or not to take measures set forth in the Secretary's regulations if these circumstances exist;

6. The states must remit the full value of all overissuances to the federal government; and

7. Permitting plaintiff to assert an equitable estoppel defense to the DHS's overpayment claim is inconsistent with federal case law, as well as with the federal statutes and regulations regarding overissuances.

*See* Notice of Removal, at 3–5.

Plaintiff first contends that the Notice of Removal fails to raise a federal defense to the third-party complaint. Plaintiff states that, although the food stamp program is federally funded and governed by the federal Act and the regulations promulgated thereunder, the program is administered by state agencies. Specifically, state agencies are given "the authority to determine the amount of, and settle, adjust, compromise or deny all or part of any claim which results from fraudulent or nonfraudulent overissuances to participating households." 7 C.F.R. § 271.4(b). Plaintiff asserts that, in both his original pleading and the Third–Party Complaint, there is no allegation of any act done by the Secretary. According to plaintiff, the only pertinent issues here involve equitable estoppel under Hawai'i state law. Thus, plaintiff argues, the Secretary's jurisdictional arguments are misplaced.

Second, plaintiff argues that the Secretary has not been sued for any action he has taken, and that, although the caption of the Third–Party Complaint names the Secretary as third-party defendant, the real defendant is the Department of Agriculture itself. Plaintiff asserts that removal of this case was improper, since, under *Primate Protection League*, agencies cannot themselves remove actions to federal court based on 28 U.S.C.

---

**3.** The Court of Appeals for the Ninth Circuit has previously allowed third-party defendants to remove actions pursuant to the officer removal statute. *See, e.g. Edwards v. McMahon*, 834 F.2d 796 (9th Cir.1987). As one court has stated, "Because of the strong policy considerations in favor of removal when the requirements of § 1442(a)(1) are otherwise met, courts have held that the fact that the federal officer is a third-party defendant will not defeat removal under that statute." *Fleet Bank—NH v. Engeleiter*, 753 F.Supp. 417, 420 (D.N.H.1991) (citations omitted).

**4.** In *Primate Protection League*, the Court stated, "[W]e think Congress could rationally decide that individual officers, but not agencies, needed the protection of a federal forum in which to raise their federal defenses." 500 U.S. at 85–86, 111 S.Ct. at 1709. The Court recognized that Congress, in enacting the officer removal statute, had a "crucial reason" for treating federal officers and federal agencies differently: "[B]ecause of the manipulable complexities involved in determining their immunity, federal officers needed the protection of a federal forum."

§ 1442(a)(1). Plaintiff thus raises the question of whether, for purposes of the officer removal statute, a suit brought against the Secretary in his official capacity constitutes a suit against an "officer," permitting removal under the statute, or a suit against an agency, thereby precluding such removal. Since the resolution of this threshold issue is necessary before the court can entertain the question of whether the Secretary has alleged a colorable federal defense, the court will address plaintiff's arguments in reverse order.

■ The Court of Appeals for the Ninth Circuit has not squarely addressed the issue of whether a suit brought in state court against the executive head of an agency, in his or her official capacity, constitutes a suit against an "officer" satisfying the requirements of § 1442(a)(1). However, the two other courts of appeals which have confronted this issue have expressly held that an official-capacity defendant may not initiate a removal under § 1442(a)(1). In *Western Securities Co. v. Derwinski,* 937 F.2d 1276 (7th Cir.1991), the Seventh Circuit refused to allow the Secretary of the Department of Veterans Affairs, sued in his official capacity, to remove an action to federal court under § 1442(a)(1). In that case, Judge Posner wrote that "while the suit ... is nominally against the Administrator, it is against him in his official capacity and such suits are considered to be against the government itself." *Id.* at 1279.

Similarly, in *American Policyholders Ins. Co. v. Nyacol Products, Inc.,* 989 F.2d 1256 (1st Cir.1993), *cert. denied sub nom. Keough v. American Policyholders Ins. Co.,* ⸺ U.S. ⸺, 114 S.Ct. 682, 126 L.Ed.2d 650 (1994), the First Circuit agreed with the *Western Securities* court that *Primate Protection League,* logically extended, "mandates that a federal officer sued solely in his or her official capacity may not remove a suit to federal court under the aegis of 28 U.S.C. § 1442(a)(1)." 989 F.2d at 1261. In *American Policyholders,* a regional administrator of the Environmental Protection Agency was named as defendant. In holding that the officer's removal was improper under § 1442(a)(1), the court noted the general rule that "a suit against an officer in the officer's official capacity constitutes a suit against the government entity which the officer heads." *Id.* at 1259. The court cited to *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985), in which the Supreme Court explained that, while individual-capacity actions seek to impose personal liability upon the government official, payable out of personal assets, an official-capacity action is to be treated as a suit against the entity. 989 F.2d at 1259. "Phrased differently, 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Id.* (quoting *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978)).

The First Circuit found no reason to depart from this general rule regarding official-capacity suits when considering the appropriateness of removal under 28 U.S.C. § 1442(a)(1). While official-capacity suits involve complicated questions as to the officer's immunity that support a protective grant of removal jurisdiction, "agencies do not need the prophylaxis of federal removal because determining an agency's immunity ... is a 'sufficiently straightforward' proposition." *Id.* at 1260 (quoting *Primate Protection League,* 500 U.S. at 85, 111 S.Ct. at 1708). The court found this rationale to strongly favor treating official-capacity suits for the purpose of removal in the same manner as suits against the agency: "After all, because a suit against an officer in her official capacity cannot bind the officer personally ... no issues of immunity can possibly arise that differ from those arising in a suit directly against the agency." *Id.* (citation omitted).

The Secretary acknowledges the decisions in *Western Securities* and *American Policyholders,* but asserts that the "better view" is that the requirement that officers be sued in their individual capacities should not be grafted into section 1442. The Secretary argues that in *Primate Protection League,* the Supreme Court did not hold that suits against officers in their official capacities were to be treated as suits against agencies for removal purposes. Moreover, the Secretary submits that, unlike the scenario in *Pri-*

*mate Protection League,* the Secretary's defense in this case does not rest on sovereign immunity; it rests, instead, on the Secretary's contentions that federal statutes and regulations preempt the state's common law and that federal case law precludes plaintiff's retention of an overpayment of food stamps. The Secretary also asserts that the outcome of this case "may significantly affect the federal Treasury." Third-party defendant's opposition memorandum, at 11. Finally, the Secretary cites to *Macias v. Kerr–McGee Corp.,* 23 Envtl.L.Rep. (Envtl.L.Inst.) 20,226, 20,228, 1992 WL 210028 (N.D.Ill. Aug. 19, 1992), for the proposition that a third-party federal defendant sued in his official capacity can remove under § 1442 where a "significant federal interest" is clearly at stake.

■ The Secretary's arguments are unpersuasive. First, this court finds that the First and Seventh Circuits' treatment of the officer removal issue, while not binding on this court, is particularly instructive in light of 28 U.S.C. § 1442(a)(1) and the Supreme Court's pronouncements in *Primate Protection League* and other cases addressing the issue of official-capacity versus individual-capacity law suits. As noted by the *American Policyholders* court, a string of Supreme Court cases hold that a suit against a government officer in his or her official capacity binds the agency or other government entity, not the officer personally. 989 F.2d at 1259 (citing *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); and *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 687, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949)). In light of this precedent, this court cannot rationally distinguish, for removal purposes, between an action brought against the Department of Agriculture itself and an action brought against the Secretary of the Department of Agriculture in his official capacity. To allow removal where the defendant is a person sued only in his official capacity would circumvent the reasoning of *Primate Protection League.* As the First Circuit articulated:

> Given the identity of juridical interest that exists between a government agency and

its executive officer when the latter is sued only in his or her official capacity, the fact that the agency may not remove the action under the officer removal statute compels the conclusion that an official-capacity defendant is likewise disabled from initiating removal thereunder.

*American Policyholders,* 989 F.2d at 1260.

Furthermore,. the Secretary's reliance on *Macias* is misplaced. In that case, the plaintiff filed suit against Kerr–McGee Corporation, seeking damages for personal injuries sustained as a result of exposure to certain toxic chemicals. Kerr–McGee subsequently filed a third-party complaint against the EPA, as well as the Administrator of the EPA and the Chairman of the Nuclear Regulatory Commission, in their individual and official capacities. *Macias,* 23 Envtl.L.Rept. at 20,226. Kerr–McGee sought a declaration that the third-party defendants prevented the company from removing the chemical from plaintiff's property, and that the federal officials were required to allow Kerr–McGee to carry out its removal program. *Id.* at 20,228. The district court upheld the third-party defendants' removal of the action, finding that a "significant federal interest" was clearly present in the case, since the primary issue at bar involved the "authority of the federal officials and their agencies to decide the proper remedial action to be taken regarding the contaminated materials." *Id.*

First, the court notes that the district court's opinion in *Macias* appears to be at odds with the Seventh Circuit's clear holding in *Western Securities* that suits against officials in their official capacities are considered to be against the government itself. 937 F.2d at 1279. Furthermore, the First Circuit's opinion in *American Policyholders,* which provided a much more thorough analysis of the officer removal statute than contained in the *Western Securities* opinion, was filed subsequent to the district court's decision in *Macias,* and has recently been reaffirmed in *Conjugal Partnership v. Conjugal Partnership,* 22 F.3d 391, 396 (1st Cir.1994) (stating that "because an agency may not remove a case under [§ 1442(a)(1) ] ... 'a federal officer sued solely in his or her official capacity may not remove a suit to federal

court under the aegis of 28 U.S.C. § 1442(a)(1)'" (quoting *American Policyholders,* 989 F.2d at 1261)).

Second, the court also notes that in *Macias,* the federal officials were sued not only in their official capacities, but in their individual capacities as well. Thus *Macias* is distinguishable from *American Policyholders* and the instant case, which involve federal officials sued only in their official capacities.

Finally, even if the *Macias* court was correct in granting removal based upon the existence of a "significant federal interest," such is not the case in the instant action. The Secretary himself admits that he is not raising an immunity defense, but is instead asserting that Hawaii's equitable estoppel doctrine does not prevent the collection of food stamp overissuances. Thus, by his own admission, the Secretary has not implicated the type of "complicated questions that arise as to [an] officer's immunity [to] support a protective grant of removal jurisdiction." *See American Policyholders,* 989 F.2d at 1260. Furthermore, the Secretary is not being sued for the way he is administering the food stamp program, nor are his regulations being challenged. Neither does this case involve issues of plaintiff's eligibility to receive food stamps. As one court has stated:

> Although eligibility requirements are strictly governed by federal law, the collection of food stamp overissuances has been broadly delegated to the states. The Secretary of the Department of Agriculture has delegated to the state agencies "the authority to determine the amount of, and settle, adjust, compromise or deny all or part of any claim which results from fraudulent or nonfraudulent overissuances to participating households." 7 C.F.R. 271.4(b). This delegation of authority to the states cuts squarely against the view that the federal act was intended to preempt any and all state law claims that relate to it.

*Vang v. Healy,* 804 F.Supp. 79, 82 (E.D.Cal. 1992) (involving, as in the instant case, a plaintiff's assertion that the collection of a food stamp overissuance was barred by the doctrine of equitable estoppel). Although the *Vang* court's analysis centered around an interpretation of 28 U.S.C. § 1441, rather than § 1442(a)(1), this court finds *Vang*'s placement of food stamp overissuance and estoppel issues within the ambit of state, rather than federal law to be relevant to the present case.

As noted above, this case does not involve, as in *Macias,* an allegation that the agency administrator has adversely affected the plaintiff through his own actions. In *Macias,* the plaintiffs sought a declaration that the *individual federal officers* had "prevented Kerr–McGee from removing thorium–contaminated materials from plaintiff's property," and that these officers "must allow Kerr–McGee to carry out its removal program." 23 Envtl.L.Rept. at 20,228. The court found that a "significant federal interest" was present in the case only after recognizing that the main issue raised by plaintiff was "the authority of the federal officials and their agencies to decide the proper remedial action to be take regarding the contaminated materials." *Id.*

In this case, however, plaintiff neither alleges that the Secretary acted unlawfully, nor questions the Secretary's authority to oversee the federal food stamp program. Rather, this case involves the application of state law defenses to state agency collection efforts conducted pursuant to powers specifically delegated to the DHS. The fact that the food stamp program is federally funded, or that the Secretary is authorized under the Act to administer the program, is irrelevant to the issue of whether the Secretary has had anything more than an official, titular involvement in this lawsuit. In this court's view, Secretary Espy's nominal involvement in this case has not created a "significant federal interest" to warrant its removal.

Because the Secretary is here being sued in his official capacity only, the court hereby applies the rationale of *American Policyholders* and *Western Securities* in finding that the claims against the Secretary are indistinguishable from claims against the Department of Agriculture itself. Thus, under *Primate Protection League,* the removal of this action is precluded under 28 U.S.C. § 1442(a)(1). Since no basis for removal jurisdiction is present, the court must grant

plaintiffs' motion for remand. The remaining motions before the court need not be addressed.

### CONCLUSION

For the reasons stated above, the court REMANDS the instant action to the Circuit Court for the First Circuit, State of Hawai'i.

IT IS SO ORDERED.