PARADISE MOTORS, INC., Petitioner,

v.

Michael E. MURPHY, District Director of the Department of the Treasury, United States Customs Service, Respondent.

Civ. No. 1994–82.

District Court of Virgin Islands, D. St. Thomas and St.

Nov. 29, 1994.

Jewel L. Cooper, Tom Bolt & Associates, St. Thomas, VI, for plaintiff.

Clarence B. Taylor, Office of U.S. Atty., St. Thomas, VI, for defendant.

## OPINION

MOORE, Chief Judge:

Petitioner Paradise Motors, Inc.'s ("Paradise Motors") motion for remand requires us to once again navigate the precarious shoals that emerge at the confluence of Virgin Islands and federal law. At issue here is whether a federal officer properly removed a case involving the customs laws in the Virgin Islands. Although we conclude that this case was improvidently removed under 28 U.S.C. § 1442(a) (1976), we find that the presence of a federal question in Paradise Motors' petition allows us to retain jurisdiction pursuant to 28 U.S.C. § 1441(b) (1976). Accordingly, petitioner's motion for remand is denied.

## BACKGROUND

Despite seventy-seven years of American sovereignty, Danish colonial customs laws remain in force in the Virgin Islands. "When the United States purchased the Virgin Islands from Denmark in 1917, laws were already in place which provided for Customs duties to be levied upon goods coming into the Virgin Islands, with the revenue going to the colonial treasury." *United States v. Chabot,* 19 V.I. 28, 37, 531 F.Supp. 1063, 1069 (D.V.I.1982). As the result of a deliberate Congressional policy, these customs laws were left in place in the territory after the

transfer.[1] The 1917 Organic Act, the first charter of government for the territory under American rule, specifically extended the Danish customs laws in place in the islands at the time of the transfer.[2] Equally important for our purposes here, the 1917 Organic Act also directed officials of the U.S. Customs and Postal Services to assist in the collection of taxes and customs duties.[3]

■ The 1936 Organic Act[4] expressly extended the customs duties established under Danish law with the proviso that the Secretary of the Treasury administer the customs laws in the Virgin Islands.[5] As originally enacted, the Revised Organic Act[6] made no reference to the Danish customs duties ex-cept to provide in section 28(a) that the proceeds of all such customs duties from goods imported into the Virgin Islands were to be covered into the treasury of the Virgin Islands. Revised Organic Act § 28(a), 48 U.S.C. § 1642. Like earlier statutes, however, the Revised Organic Act carried forward all Danish colonial laws then in force in the Territory, so long as they were "not inconsistent" with the new law. Revised Organic Act § 8(c), 48 U.S.C. 1574(c).[7] In 1977 Congress amended the Revised Organic Act to allow the Virgin Islands Legislature to permit duty-free importation of goods into the Virgin Islands and to vary the customs duties carried over from Danish law below "6 per

1. Act of March 3, 1917, ch. 171, 39 Stat. 1132 (codified as amended at 48 U.S.C. §§ 1392, 1394–1396 (1976)), *reprinted in* V.I. CODE ANN., Historical Documents, 40 (1967) ("1917 Organic Act"). Section 2 of this Act reads in pertinent part:

    Until Congress shall otherwise provide, in so far as compatible with the changed sovereignty ... the laws regulating elections and the electoral franchise ... and the other local laws, in force and effect in said islands on the 17th day of January, 1917, shall remain in force and effect in said islands....

    1917 Organic Act § 2; 48 U.S.C. § 1392.

2. The Danish customs laws extended by the Act of 1917 referred primarily to the import duty established and enforced pursuant to two Danish laws, both enacted in 1914. The first law imposed a 6% "import duty" on all goods imported into St. Thomas and St. John. Danish Law No. 64 of April 1, 1914, concerning Custom House and Ships Dues in St. Thomas and St. Jan ("Danish Law No. 64"), *reprinted in* V.I. CODE ANN., Historical Documents, 69–74 (1967). The second law, Ordinance of August 6, 1914, promulgated rules for the collection of the import duty established by Danish Law No. 64. Ordinance of August 6, 1914, *reprinted in* V.I. CODE ANN, Historical Documents, 74–81 (1967) ("Ordinance of 1914").

    As originally enacted, these laws did not apply to the island of St. Croix; however in 1936 Congress made these Danish customs laws applicable throughout the Virgin Islands. 48 U.S.C. § 1406i (1976).

3. Section 4 of the 1917 Organic Act reads in pertinent part:

    Until Congress shall otherwise provide all laws now imposing taxes in the [Virgin Islands], including the customs laws and regulations, shall, insofar as compatible with the changed sovereignty ... continue in force and effect.... **The officials of the Customs and Postal Services of the United States are direct-ed to assist the appropriate officials of the [Virgin Islands] in the collection of these taxes.**

    1917 Organic Act § 4, *reprinted in* V.I. CODE ANN., Historical Documents, 42 (1967); 48 U.S.C. § 1395 (emphasis added).

4. Ch. 699, 49 Stat. 1817 (1936) (codified as amended at 48 U.S.C. §§ 1405–1406m (1976)), *reprinted in* V.I. CODE ANN., Historical Documents, 45–83 (1967) ("1936 Organic Act").

5. Section 36 provides in relevant part:

    Until Congress shall otherwise provide, all laws concerning import duties and customs in the municipality of Saint Thomas and Saint John now in effect shall be in force and effect in and for the Virgin Islands: *Provided,* That the Secretary of the Treasury shall ... make rules and regulations and appoint such officers and employees as he may deem necessary for the administration of the customs laws.

    1936 Organic Act § 36, *reprinted in* V.I. CODE ANN., Historical Documents, 68 (1967); 48 U.S.C. § 1406i (1976). The "customs laws" referred to in § 36 are the Danish customs laws in force in the Virgin Islands, which are described *supra* note 2. *See Virgo Corp. v. Paiewonsky,* 384 F.2d 569, 576 (3d Cir.1967), *cert. denied,* 390 U.S. 1041, 88 S.Ct. 1634, 20 L.Ed.2d 303 (1968).

6. Ch. 558, 68 Stat. 497 (1954) (codified as amended at 48 U.S.C. §§ 1541–1645 (1976 & Supp. X 1986)), *reprinted in* V.I. CODE ANN., Historical Documents, 85–134 (1967) ("Revised Organic Act").

7. Although the Revised Organic Act "operated to repeal" most provisions of the 1936 Organic Act, *Virgo Corp. v. Paiewonsky,* 384 F.2d at 578, the provisions of section 36 of the 1936 Organic Act authorizing the Secretary of the Treasury to administer the Danish customs laws survived. *Id.* at 576 n. 4, 577.

centum ad valorem" or its equivalent.[8] 48 U.S.C. §§ 1574(f)(1), 1574(f)(2) *added by* Pub.L. No. 95–134 (1977). The 1977 amendment also placed substantial limitations on the Legislature's power to alter these customs laws. "Nothing in this subsection shall be construed as empowering the Legislature of the Virgin Islands to repeal or amend any provision in law ... which pertains to the customs valuation or customs classification of articles imported in the Virgin Islands." 48 U.S.C. § 1574(f)(3).[9] Aside from imposing these limitations, the 1977 amendment reaffirmed Congress' desire that these Danish customs duties remain in force in the Territory.

Thus, since the acquisition of the Virgin Islands, Congress has consistently asserted its authority over the assessment of customs duties on articles imported into the Territory, a function traditionally performed only by a sovereign. See *United States v. Hyde*, 37 F.3d 116, 119, 121–22 (3d Cir.1994). As a result of Congress' decision to treat the Virgin Islands as a separate "customs zone," *Chabot*, 19 V.I. at 37, 531 F.Supp. at 1069,[10] with a separate customs border, *Hyde*, 37 F.3d at 121 (3d Cir.1994), the Danish customs laws of 1914 survive.

## FACTS

The essential facts of this case are not in dispute. On May 2, 1994, respondent District Director of the U.S. Customs Service[11] levied on Paradise Motors a customs duty of $62,782.14 and a penalty of $1,569,553.50 for an alleged undervaluation of imported goods. Petitioner challenged this assessment in Territorial Court by filing a petition for redetermination of civil penalty and for injunctive

relief on June 7, 1994. Among other things, Paradise Motors urges that the penalty for underreporting the value of imported goods is three times the customs duty, pursuant to V.I. CODE ANN. tit. 33, § 53(e) (Supp.1994), not the 25–fold penalty authorized by the Ordinance of 1914. On June 9, 1994, respondent removed this case pursuant to 28 U.S.C. § 1442(a)(1); earlier that same day, before receiving respondent's notice of removal, the Territorial Court denied petitioner's request for injunctive relief. Petitioner filed its motion for remand shortly thereafter.

We understand petitioner's motion to advance three arguments: 1) the determination of the amount of the applicable customs duty and penalty is a matter of local interest, governed by local law, and, therefore, the sovereign interests of the Territory dictate that the matter be adjudicated in a local, rather than a federal forum; 2) when enforcing the customs laws in the Virgin Islands, respondent acts as an agent of the local government, making the policies animating the federal removal statute inapplicable; and 3) because the Territorial Court has already exercised jurisdiction in this matter, this Court, as a matter of comity, should decline to hear this case. Respondent counters that he was acting under the color of his office in imposing the customs duty and penalty; further, since he is appointed by the Secretary of the Treasury and not the Governor of the Virgin Islands, respondent contends that he cannot be an agent of the local government. Because we conclude that federal officer removal per section 1442(a)(1) was improper in this case, whether respondent acts as an agent of the local government when enforc-

---

**8.** *See* S.REP.No. 332, 95th Cong., 1st Sess. 11 (1977), *reprinted in* 1977 U.S.C.C.A.N. 3000, 3006 ("This amendment ... would allow the Virgin Islands Legislature to vary the present 6–percent ad valorem custom duty on the importation of articles into the Virgin Islands. **The duty is a carry-over from Danish law** and the committee believes ... that the local legislature should be allowed to vary the duty.") (emphasis added).

**9.** This restriction imposed by Congress on the V.I. Legislature, read together with the legislative history, forecloses any possibility that the 1977 amendment was meant to give the V.I. Legislature the power to impose new customs duties,

separate and apart from those established under Danish law.

**10.** In reaching that conclusion, *Chabot* relied on the Tariff Act of 1930 which specifically defines the United States Customs zone as excluding the U.S. Virgin Islands. 19 U.S.C. § 1401(h) (1980).

**11.** Pursuant to the congressional directive in § 4 of the 1917 Organic Act and § 36 of the 1936 Organic Act, the district director of the U.S. Customs Service collects customs duties and imposes penalties under the Danish customs laws of 1914.

ing the Danish custom laws is no longer relevant to the disposition of this matter.[12]

## DISCUSSION

### I.

At the outset, we review the effect of recent jurisdictional changes on the status of the District Court and Territorial Court in general and on removal in particular.

■ In 1984, Congress amended the Revised Organic Act, the "basic charter of government for the territory," *Virgo Corp. v. Paiewonsky*, 384 F.2d at 576. Among other things, the 1984 amendments recharted the respective jurisdictional boundaries of this Court and the Territorial Court. Revised Organic Act, *amended by* Pub.L. No. 98–454.[13] The 1984 amendments also clarified the relationship between this Court and the Territorial Court on inter-jurisdictional matters such as removal. Section 23 of the Revised Organic Act now reads in pertinent part:

> The relations between the courts established by the Constitution or laws of the United States and the courts established by local law with respect to appeals, certiorari, **removal of causes,** the issuance of writs of habeas corpus, and other matters or proceeding shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings. . . .

48 U.S.C. § 1613 (Supp.X 1986) (emphasis added). Therefore, this Court is a "district court" as that term is used in the federal removal statutes, *Government of Virgin Islands v. May*, 384 F.Supp. 1035, 1037–38 (D.V.I.1974), and, correlatively, the Territorial Court is a "state court" for purposes of removal.

■ Petitioner argues that, because of these jurisdictional changes, the Territorial Court may properly entertain cases involving federal officials or raising federal questions. We agree. Petitioner errs, however, in regarding removal in this case as a challenge either to the sovereign aspirations of the Territory or to the power of the Territorial Court to construe matters of local concern. To the contrary, removal is an "incident of federal supremacy," *Willingham v. Morgan*, 395 U.S. 402, 405, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1969). We stated recently in *United States v. Bruney*, 866 F.Supp. 874 (D.V.I.1994), that the 1984 amendments were designed "to extend the principles of federalism to the judicial system of this Territory." *Id.* at 879 n. 20. As such, the Territorial Court, like any other "state" court, must yield when the legitimate exercise of federal authority justifies removal.

### II.

■ Although neither party has raised the issue, we must consider whether respondent is sued in his official capacity and whether a federal officer so sued can effect removal under section 1442(a)(1).[14] These questions are especially significant for removal pur-

---

**12.** Moreover, as the legislative history suggests, and as we discuss in section III *infra*, Congress' treatment of the Danish customs duties in force in the Virgin Islands undermines petitioner's characterization of these customs duties as "local."

**13.** As the Third Circuit recently explained in *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servics. Corp.*, 27 F.3d 911 (1994):

> [T]he Territorial Court has original jurisdiction over all local civil actions. The District Court of the Virgin Islands has exclusive jurisdiction equivalent to United States District Courts over such fields as admiralty, bankruptcy, patent, copyright and trademark, and other matters not relevant here. The Territorial

Court and the District Court have concurrent jurisdiction over federal question and diversity cases.

*Id.* at 914 (citing *Brow v. Farrelly*, 994 F.2d 1027, 1032–34 (3d Cir.1993)).

**14.** 28 U.S.C. § 1442(a)(1) (1976) reads in pertinent part:

> A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office. . . .

poses in light of the U.S. Supreme Court's decision in *International Primate Protection League v. Administrators of Tulane Educ. Fund,* 500 U.S. 72, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991), which held that section 1442(a)(1) does not apply to federal agencies. "We have little trouble concluding that the statutory language excludes agencies from the removal power." *Id.* at 79, 111 S.Ct. at 1705. Although the Court did not consider whether official-capacity suits could be removed under section 1442(a)(1), we believe that the rationale in *Primate Protection League* compels the conclusion that a federal official sued only in his official capacity may not remove a case to the district court.

We are persuaded in this regard by the First Circuit's reasoning in *American Policy-holders Ins. Co. v. Nyacol Prod., Inc.,* 989 F.2d 1256 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 682, 126 L.Ed.2d 650 (1994). As that court stated, "a suit against a government officer in his or her official capacity is a suit against the agency." *Id.* at 1260. Thus, "while individual-capacity actions 'seek to impose personal liability upon a government official,' payable out of personal assets, an official-capacity action is, 'in all respects other than name, to be treated as a suit against the entity.'" *Id.* at 1259 (citing *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)). Because official-capacity actions are effectively suits against the respective agencies, "an official-capacity defendant is ... disabled from initiating removal [under 28 U.S.C. § 1442(a)(1) ]." *Id.* at 1260; *accord Western Sec. Co. v. Derwinski,* 937 F.2d 1276, 1279 (7th Cir.1991); *Turner v. Rubin,* 863 F.Supp. 1198, 1201 (D.Haw.1994).

In the instant case, we find that petitioner's suit is directed against respondent in his official capacity as District Director of the U.S. Customs Service. Petitioner seeks neither payment from respondent's personal assets nor a determination that respondent is personally liable for his conduct; instead, respondent is named solely because he is the foremost local representative of the U.S. Customs Service. Accordingly, we conclude that removal under 28 U.S.C. § 1442(a)(1) was improper.

### III.

Our inquiry is not at an end, however. Having concluded that removal was improper under section 1442(a)(1), we must now determine whether remand is necessary pursuant to 28 U.S.C. § 1447(c) (Supp. VI 1988). *See Primate Protection League,* 500 U.S. at 87, 111 S.Ct. at 1709. Section 1447(c) requires that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a case removed from the state court], the case shall be remanded." 28 U.S.C. § 1447(c) (Supp. VI 1988). Even though this case was infelicitously removed under § 1442(a)(1), the Court may still exercise jurisdiction pursuant to 28 U.S.C. § 1441(b).[15] Because we find that Paradise Motors' petition for redetermination raises a federal question that may be resolved in a federal forum, we retain jurisdiction in this case.

The legal question presented by Paradise Motors' petition for redetermination[16] is whether the penalty for underreporting the value of goods imported into the Virgin Islands should be three times the customs duty, as required by 33 V.I.C.

---

**15.** 28 U.S.C. § 1441(b) reads in pertinent part:
  Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties....

**16.** Under the well-pleaded complaint rule, federal jurisdiction "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration...." *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct.

724, 724–25, 58 L.Ed. 1218 (1914). Thus, "a defense that raises a federal question is inadequate to confer federal jurisdiction." *Merrell Dow Pharmaceuticals,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986). It is also settled that the well-pleaded complaint rule applies to removals from state court. *Id.; Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10 n. 9, 103 S.Ct. 2841, 2847 n. 9, 77 L.Ed.2d 420 (1983); *Virgin Islands Hous. Auth. v. Coastal Gen. Const.,* 27 F.3d at 915.

§ 53(e),[17] or 25 times the customs duty, pursuant to the Ordinance of 1914.[18] Before a court can properly resolve this question, however, it must first decide whether Congress empowered the V.I. Legislature to alter the penalty provisions of the Danish customs laws. While we do not decide this issue today, the resolution of this issue presents a question of preeminent federal concern, given the limitations imposed on the V.I. Legislature by section 8(f)(3) of the Revised Organic Act, 48 U.S.C. § 1574(f)(3).

In arguing that the customs duties applicable in the Virgin Islands are a matter of local law, petitioner places great weight on the fact that the proceeds of the customs duties are retained in the Virgin Islands and are available for expenditure by the local government.[19] Petitioner's argument overlooks the fact that section 28(a) also permits the V.I.

government to retain and disburse the proceeds of the U.S. income tax and passport, immigration and naturalization fees, all of which are clearly federal in origin. Indeed, the fact that the customs duties at issue here are included in section 28(a) with these indisputably federal fees and taxes suggests that the customs duties are federal in nature.[20]

Petitioner also points us to the language of section 8(c) of the Revised Organic Act which permits the V.I. Legislature to "amend, alter, modify, or repeal any local law or ordinance."[21] However, this language begs the essential question, namely, whether the penalty provisions of the customs duties are within the jurisdiction of the V.I. Legislature. Petitioner further suggests that because the Danish customs duties apply only in the Virgin Islands and are governed, in part, by local law,[22] they are a matter of local concern.

17. Section 53(e), which was added to the V.I. Excise Tax Law in 1979, reads in pertinent part:
   If any consignor, seller, owner, importer, consignee, carrier, or other person enters or introduces, or attempts to enter or introduce, any articles, goods, merchandise, or commodities into the Virgin Islands by means of any false document, statement, or practice such person or persons shall be liable to a civil penalty equal to three times the sum of customs duties and excise taxes otherwise determined to be due....
   33 V.I.C. § 53(e).

18. Section 23 of the Ordinance of 1914 reads in pertinent part:
   If the receiver of goods omits altogether to enter an article, or reports a less quantity or a less value than the actual quantity or value, the penalty is ... besides the ordinary duty on the goods, a fine equal to 25 times the amount of the duty chargeable on the non-reported value.
   Ordinance of 1914 § 23, *reprinted in* V.I. Code Ann., Historical Documents, 79 (1967).

19. Section 28(a) of the Revised Organic Act reads in pertinent part:
   The proceeds of customs duties, the proceeds of the United States income tax, the proceeds of any taxes levied by the Congress on the inhabitants of the Virgin Islands, and the proceeds of all quarantine, passport, immigration, and naturalization fees collected in the Virgin Islands, less the cost of collecting all of said duties, taxes, and fees, shall be covered into the treasury of the Virgin Islands, and shall be available for expenditure as the Legislature of the Virgin Islands may provide....
   Revised Organic Act § 28(a), *reprinted in* V.I. Code Ann., Historical Documents, 129 (1967); 48 U.S.C. § 1642.

20. For example, although the proceeds of the U.S. income tax are expended by the V.I. Legislature under the mirror tax system, federal law still governs, for "Congress has not empowered the Virgin Islands Legislature to redefine terms in the Internal Revenue Code." *Chicago Bridge & Iron Co., Ltd v. Wheatley,* 430 F.2d 973, 975 (3d Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 873, 27 L.Ed.2d 809 (1971).

21. Section 8(c) of the Revised Organic Act reads in pertinent part:
   [T]he legislature shall have power, when **within its jurisdiction and not inconsistent with the other provisions of this chapter,** to amend, alter, modify, or repeal any local law or ordinance, public or private, civil or criminal, continued in force and effect by this chapter, except as herein otherwise provided, and to enact new laws not inconsistent with any law of the United States applicable to the Virgin Islands, subject to the power of Congress to annul any such Act of the legislature.
   Revised Organic Act § 8(c), *reprinted in* V.I. Code Ann., Historical Documents, 107 (1967); 48 U.S.C. § 1574(c) (emphasis added).

22. *See, e.g.,* V.I. Code Ann. tit. 33, §§ 525–32 (Supp.1994) (exempting certain items from customs duties); V.I. Code Ann. tit. 1, § 6(b) (1967) (specifically exempting the Danish customs duties from repeal); V.I. Code Ann. tit. 33, § 1931(7) (1967) (including customs duties in the definition of V.I. internal revenue taxes); and V.I. Code Ann. tit. 33, §§ 1731–85 (1967) (governing petitions for redetermination of V.I. internal revenue taxes, including customs duties).

Of course, the same could be said of the U.S. income tax laws applicable in the Virgin Islands, over which this "federal" Court has exclusive jurisdiction. *See* 48 U.S.C. § 1612(a).

 In fact, petitioner's attempt to classify the customs duties as "local" misses the point; the label affixed to the issue is not determinative of federal question jurisdiction. Even if we were to agree that the customs duties in the Virgin Islands are of local concern, federal question jurisdiction may still exist. As the Supreme Court found in *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), even though a state law creates the cause of action, a case might still "arise under" the laws of the United States if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 28, 103 S.Ct. at 2856; *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986).

The general rule is that where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States, and that such federal claim is not merely colorable, and rests upon a reasonable foundation, the District Court has jurisdiction under this provision.

*Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 199, 41 S.Ct. 243, 245, 65 L.Ed. 577 (1921).

In sum, whether a territory devoid of its own, independent sovereign power can alter provisions of law which are normally administered by a sovereign and over which Congress has consistently asserted its control is a question of paramount federal concern which may be entertained by this Court.

### IV.

 Petitioner's final argument, that the principle of comity requires remand, can be disposed of easily. Because removal is an outgrowth of federalism and involves the legitimate exercise of federal authority, the principle of comity is irrelevant in removal cases. Once the defendant has complied with the procedural and jurisdictional requirements of the removal statutes, removal follows as a matter of course. While some courts have ordered remand where there has been undue delay in providing notice of removal to the opposing party, *see Coletti v. Ovaltine Food Prods.,* 274 F.Supp. 719, 723 (D.P.R.1967), that result is not warranted here. Respondent mailed a copy of his notice of removal to petitioner on June 9, 1994, the same day that he filed his notice of removal with this Court. The record also indicates that respondent filed a copy of his notice of removal with the clerk of the Territorial Court the next day. Clearly, respondent promptly notified petitioner and the Territorial Court of removal as required by 28 U.S.C. § 1446(d) (Supp. VI 1988). An appropriate order follows.