<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-1997

                    SIXTO MILLAN COUVERTIER,
              CONJUGAL PARTNERSHIP MILLAN QUIARA,
                    Plaintiffs, Appellants,

                               v.

           GUILLERMO GIL BONAR, HON. IN HIS OFFICIAL
        CAPACITY AS AN OFFICER OF THE USA, ETC., ET AL.,
                     Defendants, Appellees.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

      [Hon. Raymond L. Acosta, Senior U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

             Coffin and Cyr, Senior Circuit Judges.

                     _____________________

   Antonio J. Amadeo-Murga for appellant.
   Fidel A. Sevillano-del Ro, Assistant United States, with whom
Guillermo Gil, United States Attorney, was on brief, for appellee.

                      ____________________

                          May 4, 1999
                      ____________________

        TORRUELLA, Chief Judge.  In this action, plaintiffs-
appellants seek the recovery of $45,828 plus interest in prized
lottery tickets -- winning tickets -- of the lottery of the
Commonwealth of Puerto Rico that were seized by United States
Customs Service officials from appellant Sixto Milln Couvertier
pursuant to 19 U.S.C.  1305, upon his arrival in San Juan from the
U.S. Virgin Islands ("U.S.V.I.").  Section 1305 prohibits the
importation of lottery tickets into the United States from a
foreign country.   
        Plaintiffs-appellants' argument is twofold: (1) that the
U.S.V.I. is not a foreign country for purposes of  1305, and (2)
that prized lottery tickets from the Puerto Rico lottery brought
into Puerto Rico to be redeemed are not lottery tickets for the
purposes of  1305.
        The pertinent facts are not in dispute.  On July 25,
1991, Sixto Milln Couvertier arrived at Luis Muoz Marn
International Airport ("LMM") in San Juan, Puerto Rico from the
U.S.V.I. with approximately 11,287 prized Puerto Rican lottery
tickets worth approximately $22,085.  Upon entry into Puerto Rico,
the tickets were seized by the United States Customs Service for
violation of 19 U.S.C.  1305.  Again, on November 26, 1991, he
arrived at LMM with 11,160 prized Puerto Rican lottery tickets
worth approximately $23,743.  As before, the tickets were seized by
Customs pursuant to  1305.  Here, plaintiffs-appellants appeal the
district court's denial of equitable relief, i.e., a writ of
mandamus for the institution of judicial forfeiture proceedings and
the return of the seized property.  For the following reasons, we
affirm.
                           DISCUSSION
I.  Foreign Country
        The seized articles were forfeited pursuant to the Tariff
Act of 1930 ("the Act"), specifically, 19 U.S.C.  1305(a) which
bans persons from bringing into the United States various
categories of printed material, including lottery tickets.  The
pertinent provision states: "All persons are prohibited from
importing into the United States from any foreign country . . . any
lottery ticket . . . ."   1305(a) (emphasis added).
        As the district court correctly noted, the first step in
statutory construction is an examination of the terms of the
statute.  See Arnold v. United Parcel Service, Inc., 136 F.3d 854,  
857 (1st Cir. 1998).  Laws should be examined as a whole and words
given their plain meaning unless this would yield an absurd result.  
See id. at 858.
        Although the term "foreign country" is not defined, the
Act does provide a definition for "United States" at  1401(h):
"The term 'United States' includes all Territories and possessions
of the United States except the Virgin Islands, American Samoa,
Wake Island, Midway Islands, Kingman Reef, Johnston Island and the
island of Guam." (emphasis added).  A plain and proper reading of
the statute supports the conclusion that the U.S.V.I. are deemed a
"foreign country" for purposes of the Act.
        Moreover, as the district court discussed, this
conclusion finds support in the history of the relationship between
the United States and the U.S.V.I.  The U.S.V.I. were acquired by
the United States from Denmark in 1917.  Particular provisions were
enacted allowing Danish customs laws in effect at the time of the
transfer to remain in full force and effect, thereby creating a
separate customs territory.  See 48 U.S.C.  1395.  This principle
has been preserved with certain modifications.  See Paradise
Motors, Inc. v. Murphy, 892 F. Supp. 703 (D.V.I. 1994) (detailing
the history of the relationship between the United States and the
U.S.V.I. with particular attention to the customs area). At
present, articles coming into the United States from the U.S.V.I.
are subject to duties and taxes similar to those imposed on
merchandise coming in from foreign countries.  See 48 U.S.C.
1394.
        The purpose of  1305 is to avoid the importation into
the United States of various types of printed material including
lottery tickets.  Inasmuch as the U.S.V.I. have preserved their own
customs territory, independent from United States customs control,
allowing the entry of this material from the U.S.V.I. would
circumvent the statute's goal.
II.  Prized Lottery Tickets
        Appellants argue: (1) that a sensible interpretation of
1305 must exclude prized lottery tickets of the same jurisdiction
brought in for collection, for one can imagine onself buying a
lottery ticket in Puerto Rico at the airport and flying to Spain
only to discover upon return that the lottery ticket is prized, and
(2) that there is no valid basis for the Customs Service to
confiscate prized tickets because 18 U.S.C.  1301 does not
criminalize the interstate transportation of drawn lottery tickets.
        First, we note that it strains credibility for the
appellants to compare themselves to an oblivious traveler who
purchases a Puerto Rican lottery ticket that becomes prized during
an international holiday.  Such a person returning to Puerto Rico
at the end of her trip could not be said to be "importing" her
personal effects, which happen to include the lottery ticket.  By
contrast, as the appellants freely admit, "Co-Plaintiff Appellant,
Sixto Milln Couvertier, is a licensed Puerto Rico lottery agent
which is in the business of transporting drawn prized Puerto Rican
lottery tickets from Saint Thomas to Puerto Rico to redeem said
tickets."  Appellants' Br. at 8.
        Second, there is no statutory basis for their argument
that prized and non-prized lottery tickets should be treated
differently for purposes of  1305.  Section 1305 prohibits the
importation into the United States from any foreign country [of]  
. . . any lottery ticket . . . ." (emphasis added).  All words and
provisions of statutes are intended to have meaning and are to be
given effect, and no construction should be adopted which would
render statutory words or phrases meaningless, redundant or
superfluous.  See United States v. Ven-Fuel, Inc., 758 F.2d 741,
751-52 (1st Cir. 1985).  Because the statute broadly limits the
importation of any lottery ticket, and does not distinguish between
prized and non-prized tickets, we conclude that the statute
encompasses all tickets, whether they be prized or not.  Any other
construction would render nugatory the phrase: "any lottery
ticket."
        Third, we reject the notion that there is no valid basis
for the Customs Service to confiscate prized tickets because 18
U.S.C.  1301 does not criminalize the interstate transportation of
drawn lottery tickets.  It is true that federal criminal statutes
regulating lotteries, see, e.g., 18 U.S.C.  1301 & 1302, have
been narrowly construed to apply to tickets or other items
dependent on the future event of a lottery.  See, e.g., United
States v. Halseth, 342 U.S. 277, 280 (1952) (predecessor to 18
U.S.C.  1301 strictly construed so that "the words 'concerning any
lottery' mean an existing, going lottery or gambling scheme");
France v. United States, 164 U.S. 676, 682 (1897) (statute
prohibiting carrying across state lines any paper representing a
ticket or interest "dependent upon the event of a lottery" is
"highly penal, rendering its violator liable to fine and
imprisonment" and therefore must be strictly construed to apply
"only to that kind of paper which depends upon a lottery the
drawing of which has not yet taken place.").
        However,  1305 -- a part of the Tariff Act of 1930 -- is
a civil forfeiture statute found in the revenue laws regulating
customs duties.  The Supreme Court has stated that laws such as   
1305 "enacted for the prevention of fraud, for the suppression of
a public wrong, or to effect a public good, are not, in the strict
sense, penal acts, although they may inflict a penalty for
violating them . . . [, and thus are to be construed] so as most
effectually to accomplish the intention of the legislature in
passing them."  Taylor v. United States, 44 U.S. (3 How.) 197, 210
(1845).  "[C]ases tell us that . . . the revenue laws are to be
expansively read in order to give effect to the will of the
Congress."  Ven-Fuel, Inc., 758 F.2d at 753.  As a result,
appellants' attempt to improperly impose the narrow scope
applicable to 18 U.S.C.  1301 & 1302 onto 19 U.S.C.  1305 must
fail.
                           CONCLUSION
        For the reasons stated above, the judgment of the
district court is affirmed.

</body>

</html>